# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| ALAN COLE, JR. | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:06-cv-00017-IPJ-HGD |
| | ) | |
| MORGAN COUNTY JAIL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OF OPINION</u>

Plaintiff, Alan Cole, Jr., hereinafter referred to as "the plaintiff," filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States were abridged during his incarceration at the Morgan County Jail in Decatur, Alabama. The plaintiff names as defendants the Morgan County Jail, Captain Myra Yates, and Southern Health Partners, Inc.[1] The plaintiff seeks monetary relief.

On September 15, 2006, the court entered an Order for Special Report directing that a copy of the complaint in this action be forwarded to the defendants and requesting that they file a Special Report addressing the factual allegations of the

---

[1] The plaintiff incorrectly designated Southern Health Partners, Inc. as the "Morgan County Jail Medical Staff" in his complaint. (Doc. #30).

plaintiff's complaint.  (Doc. #20).  The defendants were advised that the Special Report should be submitted under oath or accompanied by affidavits and, if appropriate, would be considered as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Doc. #20).  By the same Order, the plaintiff was advised that after he received a copy of the Special Report submitted by the defendants, he should file counter-affidavits if he wished to rebut the matters presented by the defendants in the Special Report.  (Doc. #20).

On November 13 and 14, 2006, Defendants Morgan County Jail, Captain Yates, and Southern Health Partners, Inc., filed Special Reports, accompanied by affidavits and pertinent documents.  (Docs. #28 & 30).  The court subsequently construed the Special Reports as motions for summary judgment and the plaintiff was notified that he would have twenty (20) days to respond to the motions for summary judgment, filing affidavits or other material if he chose.  (Doc. #32).  The plaintiff was advised of any default or failure to comply with Fed. R. Civ. P. 56.  (Doc. #32). *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  On January 11, 2007, the plaintiff filed a response to the defendants' motions for summary judgment.  (Doc. #34).

## I.   SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law.   Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  In making that assessment, the court must draw all reasonable inferences against the moving party. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The burden of proof is upon the moving party to establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

(1986); *Bennett v. Parker*, 898 F.2d 1530, 1532 (11th Cir. 1990).  As the Eleventh

Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317,

322-23 (1986)).  However, any "specific facts" pled in a *pro se* plaintiff's sworn

complaint must be considered in opposition to summary judgment.  *See Perry v.

Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986).

## II.   FACTUAL ALLEGATIONS

A.   Plaintiff's Allegations.

The plaintiff contends that, upon his transfer to the Morgan County Jail in

November 2004, the defendants failed to give him the proper daily dosage of

Thorazine for his schizophrenia, as prescribed by Dr. Pirone at the Taylor Hardin

Secure Medical Facility.  (Compl. at 3).  Specifically, the plaintiff alleges that the

defendants cut his dosage by more than half upon his arrival at the Morgan County

Jail. (Compl. at 3-4). He claims that, as a result, he began hearing voices, hallucinating, and having thoughts of harming others as well as thoughts of suicide. (Compl. at 3-4, 5). The plaintiff contends that the defendants failed to put him "into observation even after they were notified of [his] problem several times." (Compl. at 4). The plaintiff asserts that the defendants' deliberate indifference to his medical condition caused him to attempt suicide in November 2004. (Compl. at 4, 5). The plaintiff also claims that he notified Captain Yates of his problem several times to no avail. (Compl. at 5). The plaintiff contends that Defendant Yates failed to put him "into observation where [he] could have been protected from hurting himself." (Compl. at 5). The plaintiff further contends that his suicide attempt could have been prevented "if the medication would have been given as directed by Dr. Pirone at the Taylor Hardin Secure Medical Facility." (Compl. at 5). Plaintiff states that even after his suicide attempt, "the medication was never returned to the proper dosage." (Compl. at 4). The plaintiff seeks monetary relief. (Compl. at 4).

B.    Defendants' Special Reports.

1.    Defendants Yates and Morgan County Jail.

Defendant Yates states that she currently holds the rank of Captain and her title is Compliance Officer. (Doc. #28, Ex. 1, Yates Aff. ¶ 1). She further states that prior to becoming the Compliance Officer, she served in the position of Jail Administrator

from 1997 until early 2003.  (Doc. #28, Ex. 1, Yates Aff. ¶ 1). Defendant Yates asserts that when she became the Compliance Officer in early 2003, she ceased to have any direct involvement in the day-to-day operations of the Morgan County Jail, and does not make any decisions regarding the operation of the Jail and she does not interact with inmates.  (Doc. #28, Ex. 1, Yates Aff. ¶ 2). Yates contends that she did not – during the relevant time period, or now – make decisions regarding what general health care treatment or mental health treatment is received by inmates. (Doc. #28, Ex. 1, Yates Aff. ¶ 3).

Yates claims that she never met the plaintiff and was unaware of his complaints regarding mental health care until she read his complaint and the court's Order for Special Report.  (Doc. #28, Ex. 1, Yates Aff. ¶ 4). Yates denies that the plaintiff notified her of his medical problems.  (Doc. #28, Ex. 1, Yates Aff. ¶ 5).  Specifically, she contends that she never spoke with the plaintiff or received correspondence from him.  (Doc. #28, Ex. 1, Yates Aff. ¶ 5). Yates further contends that she never indirectly received any notification of any health or mental health problem involving the plaintiff, including the alleged problems referred to in his complaint.  (Doc. #28, Ex. 1, Yates Aff. ¶ 5).

Defendant Yates asserts that the Morgan County Jail has a formal written grievance procedure which is available to all inmates in the jail to enable them to

complain about all aspects of incarceration, including health care issues. (Doc. #28, Ex. 1, Yates Aff. ¶ 6). Yates contends that, as the Compliance Officer, one of her duties is to maintain records regarding inmate grievances and that all inmate grievances are forwarded to her for review and tracking. (Doc. #28, Ex. 1, Yates Aff. ¶ 6). Yates states that the grievance procedure, and how to file a grievance, is specifically set out and described in the inmate handbook which is distributed to all inmates upon their incarceration in the Morgan County Jail. (Doc. #28, Ex. 1, Yates Aff. ¶ 6). Yates claims that after review of the plaintiff's complaint, she reviewed the grievance files she maintains as Compliance Officer. (Doc. #28, Ex. 1, Yates Aff. ¶ 7). She contends that the plaintiff never filed a grievance regarding any aspect of his incarceration, including any of the matters alleged in his Complaint. (Doc. #28, Ex. 1, Yates Aff. ¶ 7).

The defendants contend that the plaintiff was booked into the Morgan County Jail on October 27, 2004. (Doc. #28, Ex. 4 at 2). Mary Baldwin, a Sergeant at the Morgan County Jail, states that when inmates are booked into the Morgan County Jail, they are given an initial property issue consisting of uniforms, bedding and hygiene. (Doc. #28, Ex. 2, Baldwin Aff. ¶ 2). Baldwin further states that inmates are also issued an inmate handbook as part of their initial property issue. (Doc. #28, Ex. 2, Baldwin Aff. ¶ 2). Baldwin asserts that the inmate handbook provides information

on how the jail is operated and what inmates can expect during their incarceration. (Doc. #28, Ex. 2, Baldwin Aff. ¶ 2). She further asserts that pages 8 and 9 of the inmate handbook explain the Jail's grievance procedure.  (Doc. #28, Ex. 2, Baldwin Aff. ¶ 2). Attached as an exhibit to Baldwin's affidavit is a form, purportedly signed by the plaintiff, in which he acknowledges receipt of the property issue, including the inmate handbook.   (Doc. #28, Ex. 2, Baldwin Aff., Ex. A).

  2. <u>Southern Health Partners, Inc.</u>

  During the relevant time period, health care services at the Morgan County Jail were provided by Southern Health Partners, Inc. ("SHP") pursuant to a contract with the Morgan County Commission.  (Doc. #28, Ex. 1, Yates Aff. ¶ 3).  Defendant SHP states that during this time, health care in the jail was provided under the direction of Dr. Dwight Luckett, Medical Director, and Jennifer Cook, Medical Team Administrator ("MTA").  (Doc. #30, Ex. 2, Luckett Aff. ¶ 4).  SHP further states that during the relevant time period,  Nancy Weatherford was a registered nurse at the Jail and subsequently became the MTA in 2005; Dr. David Anakwenze provided psychiatric medical services to Jail inmates; and Wendy Wear, Registered Nurse, worked as a psychiatric nurse in the Jail. (Doc. #30, Ex. 1, Weatherford Aff. ¶ 3; Ex. 3, Wear Aff. ¶ 3; Ex. 4, Anakwenze Aff. ¶ 3).

SHP contends that when inmates are booked into the Jail, the inmate completes a medical intake screening form which is provided to SHP so that appropriate treatment, including mental health treatment, may either be initiated or continued. (Doc. #28, Ex. 1, Yates Aff. ¶ 3). SHP further contends that when an inmate in the Jail requires routine medical care, he or she obtains an inmate sick call slip from the corrections officer on duty in the housing unit and that form is provided to the medical staff for action. (Doc. #30, Ex. 1, Weatherford Aff. ¶ 5).

SHP asserts that when the plaintiff was booked into the Jail on October 27, 2004, he had been transferred from the Taylor Hardin Secure Medical Facility in Tuscaloosa, Alabama. (Doc. #30, Ex. 1, Weatherford Aff. ¶ 8). SHP contends that on the plaintiff's booking date, Corporal Baldwin completed an intake screening on the plaintiff and observed that the plaintiff did not threaten suicide nor did he exhibit behavior suggesting the risk of assault on the staff or other inmates. (Doc. #30, Ex. 1, Weatherford Aff. ¶ 8).

Nurse Weatherford asserts that on October 28, 2004, she performed a medical screening of the plaintiff and completed a medical staff receiving screening form. (Doc. #30, Ex. 1, Weatherford Aff. ¶ 8). She states that, during her evaluation, the plaintiff exhibited no signs that suggested a risk of suicide, assault or abnormal behavior. (Doc. #30, Ex. 1, Weatherford Aff. ¶ 8). Weatherford contends that the

plaintiff acknowledged that he suffered from mental health problems and said that he was on multiple prescriptions. (Doc. #30, Ex. 1, Weatherford Aff. ¶ 8). She noted that the plaintiff would be seen by Dr. Luckett and also by Nurse Wear, the psychiatric nurse. (Doc. #30, Ex. 1, Weatherford Aff. ¶ 8). Weatherford claims that upon completion of the screening, the plaintiff reviewed the medical staff receiving screening form and signed it in her presence. (Doc. #30, Ex. 1, Weatherford Aff. ¶ 8).

Nurse Wear states that she saw the plaintiff on October 28, 2004. (Doc. #30, Ex. 3, Wear Aff. ¶ 9). She noted that the plaintiff was alert and oriented but recorded that the plaintiff was shuffling his feet back and forth, which is a common side effect of Thorazine toxicity. (Doc. #30, Ex. 3, Wear Aff. ¶ 9). Wear further noted that the plaintiff had no suicidal or homicidal ideations. (Doc. #30, Ex. 3, Wear Aff. ¶ 9).

Dr. Luckett states that he also saw the plaintiff on October 28, 2004. (Doc. #30, Ex. 2, Luckett Aff. ¶ 10). He claims that the plaintiff presented for follow-up for hypertension. (Doc. #30, Ex. 2, Luckett Aff. ¶ 10). Luckett contends that he examined the plaintiff, noting that the plaintiff's heart had regular rhythm and rate, normal sinus rhythm and no murmurs, his lungs were clear to auscultation, and his extremities were normal and dry with no edema. (Doc. #30, Ex. 2, Luckett Aff. ¶ 10). Luckett asserts that he ordered that the plaintiff receive gemfibrozil, 600 mgs by mouth twice a day, for high cholesterol and propranolol, 60 mgs by mouth every

morning, for high blood pressure.  (Doc. #30, Ex. 2, Luckett Aff. ¶ 10).  He further asserts that he prescribed several medications to the plaintiff for anxiety and mental health, including chlorpromazine (brand name Thorazine), 150 mgs by mouth twice a day (300 total mgs/day).  (Doc. #30, Ex. 2, Luckett Aff. ¶ 11).

Luckett asserts that the plaintiff arrived at the Jail taking 150 mgs of Thorazine four times a day (600 total mgs/day), which he asserts is a large dose of Thorazine. (Doc. #30, Ex. 2, Luckett Aff. ¶ 12).  Luckett notes that Morgan County Jail inmates are administered medications twice a day.  (Doc. #30, Ex. 2, Luckett Aff. ¶ 12).  He alleges that the medical staff was concerned about changing the timing of such a large dosage to twice a day and also the toxic symptoms exhibited by the plaintiff, i.e. the shuffling of his feet, on the dosage of 600 mgs a day.  (Doc. #30, Ex. 2, Luckett Aff. ¶ 12).  Luckett alleges that, based on these factors, he prescribed 150 mgs of Thorazine twice a day until the plaintiff could be evaluated by SHP's consulting psychiatrist, Dr. David Anakwenze, who was scheduled to be at the Jail on November 8, 2004.  (Doc. #30, Ex. 2, Luckett Aff. ¶ 12).  SHP notes that from October 28, 2004, to November 8, 2004, the plaintiff completed no sick call slips and the medical staff was not aware that the plaintiff was having suicidal ideations or any problem with the medications he had been prescribed.  (Doc. #30, Ex. 1, Weatherford Aff. ¶ 13; Ex. 3, Wear Aff. ¶ 13).

SHP states that at midnight on November 8, 2004, the plaintiff was brought to the medical area by Sergeant Johnson, who stated that the plaintiff "tried to hang himself with his sheet."  (Doc. #30, Ex. 1, Weatherford Aff. ¶ 14 & Ex. A).  SHP contends that the plaintiff was seen by Gary Owens, a night shift nurse.  (Doc. #30, Ex. 1, Weatherford Aff. ¶ 14 & Ex. A).  SHP alleges that the plaintiff told Nurse Owens that "the voices in my head told me to."  (Doc. #30, Ex. 1, Weatherford Aff. ¶ 14 & Ex. A).  Owens noted a "faint reddening area noted around neck," but recorded that the plaintiff had "no difficulty breathing or hoarseness in speaking." (Doc. #30, Ex. 1, Weatherford Aff. ¶ 14 & Ex. A).  SHP contends the plaintiff was moved to observation unit 1 and placed on suicide watch.  (Doc. #30, Ex. 1, Weatherford Aff. ¶ 14 & Ex. A).  SHP asserts that the plaintiff complained of no physical injury related to his suicide attempt and suffered no physical injury arising out of the suicide attempt.  (Doc. #30, Ex. 1, Weatherford Aff. ¶ 14 & Ex. A).

SHP notes that at 6:40 a.m. on November 8, 2004, Becky Maddox, a registered nurse, saw the plaintiff in the observation unit.  (Doc. #30, Ex. 1, Weatherford Aff. ¶ 15 & Ex. A).  SHP claims that the plaintiff admitted to having suicidal or homicidal ideations and stated that the voices were telling him to hurt himself.  (Doc. #30, Ex. 1, Weatherford Aff. ¶ 15 & Ex. A).  SHP contends that Nurse Maddox noted that she would continue to observe the plaintiff and that there were no items available to the

plaintiff to cause him harm in the observation unit.  (Doc. #30, Ex. 1, Weatherford Aff. ¶ 15 & Ex. A).

SHP asserts that the plaintiff was also seen by Dr. David Anakwenze on November 8, 2004.  (Doc. #30, Ex. 4, Anakwenze Aff. ¶ 16).  Dr. Anakwenze contends that the plaintiff complained of hearing voices and that Thorazine was the only medicine that helped him when taking 600 mgs a day.  (Doc. #30, Ex. 4, Anakwenze Aff. ¶ 16).  Dr. Anakwenze noted that the plaintiff said he could not be around people because of paranoia.  (Doc. #30, Ex. 4, Anakwenze Aff. ¶ 16).  He alleges that he diagnosed the plaintiff with schizophrenia, antisocial personality and status post back surgery.  (Doc. #30, Ex. 4, Anakwenze Aff. ¶ 16).  Dr. Anakwenze claims that he also evaluated the plaintiff with a global assessment functioning score of 35-40.  (Doc. #30, Ex. 4, Anakwenze Aff. ¶ 16).  He contends that he increased the plaintiff's Thorazine dosage to 250 mgs twice a day (500 total mgs/day) and also prescribed Prolixin, 5 mgs by mouth twice a day, increased the plaintiff's Doxephine dosage to 150 mgs by mouth every morning and ordered Artane to counteract any side effects due to the increased dosage of Thorazine.  (Doc. #30, Ex. 4, Anakwenze Aff. ¶ 16).

Nurse Wear states that she saw the plaintiff on November 10, 2004, in follow-up to Dr. Anakwenze's treatment.  (Doc. #30, Ex. 3, Wear Aff. ¶ 17).  She contends

that the plaintiff was alert and oriented and stated that he felt "100% better." (Doc. #30, Ex. 3, Wear Aff. ¶ 17). Wear noted that the plaintiff denied having any suicidal or homicidal ideations and requested that he be released from suicide watch. (Doc. #30, Ex. 3, Wear Aff. ¶ 17). Wear further noted that the plaintiff denied all thoughts of self-harm. (Doc. #30, Ex. 3, Wear Aff. ¶ 17).

Dr. Anakwenze asserts that he saw the plaintiff again on November 22, 2004, in follow-up. (Doc. #30, Ex. 4, Anakwenze Aff. ¶ 18). Dr. Anakwenze contends that, during this meeting, the plaintiff requested that he be placed where he would not have to deal with noise and a crowd of people, as it made him suicidal and homicidal. (Doc. #30, Ex. 4, Anakwenze Aff. ¶ 18). Dr. Anakwenze noted that the plaintiff denied having hallucinations, although he said he continued to feel stressed easily. (Doc. #30, Ex. 4, Anakwenze Aff. ¶ 18). Dr. Anakwenze further noted that the plaintiff felt paranoid and feared that he might hurt someone and himself if overwhelmed with noise and placed in a group cell. (Doc. #30, Ex. 4, Anakwenze Aff. ¶ 18). Dr. Anakwenze alleges that he ordered the plaintiff's Proloxin dosage be increased to 10 mgs by mouth twice a day and recommended that Taylor Hardin be contacted to determine how the plaintiff was placed while there. (Doc. #30, Ex. 4, Anakwenze Aff. ¶ 18). Dr. Anakwenze further alleges that he ordered that the

plaintiff continue on all other current medications and encouraged the plaintiff to take his medications.  (Doc. #30, Ex. 4, Anakwenze Aff. ¶ 18).

Nurse Wear contends that she saw the plaintiff on December 8, 2004, and noted that the plaintiff had lower auditory hallucinations since being in a one-man cell and that the plaintiff had no complaints.  (Doc. #30, Ex. 3, Wear Aff. ¶ 19).  Wear states that the plaintiff voiced no suicidal or homicidal ideations and she noted that she would follow up as needed.  (Doc. #30, Ex. 3, Wear Aff. ¶ 19).  She states that she again saw the plaintiff on January 6, 2005, and noted that the plaintiff complained of "some" auditory hallucinations at night, but stated that they were tolerable and he did not want his medication changed.  (Doc. #30, Ex. 3, Wear Aff. ¶ 20).  Wear claims that she noted no suicidal or homicidal ideations and encouraged him to let her know if his signs or symptoms worsened.  (Doc. #30, Ex. 3, Wear Aff. ¶ 20).

SHP asserts that, in the course of providing treatment to the plaintiff, it sought the plaintiff's records during his stay at Taylor Hardin and received the plaintiff's hospitalization summary from July 2004 through October 27, 2004, but no other records were provided.  (Doc. #30, Ex. 4, Anakwenze Aff. ¶ 21).  SHP contends that the hospitalization summary, which included the plaintiff's medical chart, documented that the plaintiff was admitted to Taylor Hardin taking 100 mgs of Thorazine twice a day (200 total mgs/day).  (Doc. #30, Ex. 4, Anakwenze Aff. ¶ 21).

SHP claims that on August 30, 2004, the plaintiff's Thorazine dosage was increased to 100 mgs three times a day (300 total mgs/day).  (Doc. #30, Ex. 4, Anakwenze Aff. ¶ 21).  It further claims that on September 9, 2004, the plaintiff's Thorazine dosage was increased to 150 mgs four times a day (600 total mgs/day), but later, on the same day, the Thorazine was stopped.   (Doc. #30, Ex. 4, Anakwenze Aff. ¶ 21).  SHP contends that there is no indication in Taylor Hardin's hospitalization summary whether the plaintiff ever resumed taking Thorazine while a patient there.  (Doc. #30, Ex. 4, Anakwenze Aff. ¶ 21). SHP notes, however, that the prescription sent with the plaintiff from Taylor Hardin to Morgan County Jail noted that Dr. Perone prescribed Thorazine, 150 mgs four times a day, on October 14, 2004, and the discharge medications set out in the hospitalization summary show Thorazine, 150 mgs four times a day.  (Doc. #30, Ex. 4, Anakwenze Aff. ¶ 21).  SHP contends that, based on these records, the plaintiff had been taking Thorazine, 150 mgs four times a day for less than two weeks when he arrived at the Moragan County Jail, and his Thorazine dosage had fluctuated up and down while at Taylor Hardin.  (Doc. #30, Ex. 4, Anakwenze Aff. ¶ 21).

Dr. Anakwenze, Dr. Luckett, and Nurse Wear contend that the decision to lower the plaintiff's dosage of Thorazine from 150 mgs four times a day to 150 mgs two times a day, was within the standard of care and did not constitute deliberate

indifference to the plaintiff's psychiatric condition.  (Doc. #30, Ex. 2, Luckett Aff.

¶ 22; Ex. 3, Wear Aff. ¶ 22; Ex. 4, Anakwenze Aff. ¶ 22).

C.    Plaintiff's Response.

The plaintiff claims that he was "court ordered" by Lawrence County Judge

Phillip Reich to undergo a forensic mental evaluation as an inpatient at the Taylor

Hardin Secure Medical Facility in Tuscaloosa, Alabama.  (Doc. #34 at 5-6 & Ex. F).

He alleges that medical staff at Taylor Hardin administered a number of medications

to him in varying dosages for his "mental illness" so that the plaintiff "would be

competent and stable to stand trial."  (Doc. #34 at 6 & Ex. B).  Plaintiff asserts that

medical staff at Taylor Hardin found that Thorazine at 600 mgs daily, along with

several other medications, worked best for him.  (Doc. #34 at 6 & Ex. B).  Plaintiff

contends he was given these medications upon his discharge from Taylor Hardin.

(Doc. #34 at 6 & Ex. B).  He further contends that Judge Reich ordered that the

plaintiff receive follow-up care as "recommended by doctors at [Taylor Hardin]."

(Doc. #34 at 6 & Exs. A & D).

The plaintiff alleges that when he realized he was only receiving half the

Thorazine dosage at the Morgan County Jail, he notified "every nurse that

administered medication to him" and also wrote "Captain Yates to let her know that

he was not getting all of the Thorazine he was supposed to be getting as court

ordered." (Doc. #34 at 6-7 & Exs. A, C, & D). The plaintiff alleges that he also informed his attorney that he was not receiving the proper dosage of Thorazine. (Doc. #34 at 7 & Exs. G & I). Plaintiff contends nothing was ever done which resulted in "[an] increase [of] disturbing voices and suicidal and homicidal thoughts." (Doc. #34 at 7). The plaintiff further states that he made a plea agreement while "not in the right state of mind and not on the medications and dosages of those medications the professionals at [Taylor Hardin] put the plaintiff on and not on the medications the plaintiff was court ordered to take." [2] (Doc. #34 at 7). He asserts that he "contacted every nurse and every officer he could but nothing was done." (Doc. #34 at 7). The plaintiff alleges that the defendants' actions "completely destroyed the stabilization that Taylor Hardin did with the plaintiff's mental condition . . . ." (Doc. #34 at 7).

Furthermore, the plaintiff alleges that his mental illness precluded him from complying with the Morgan County Jail's grievance procedure. (Doc. #34 at 8). Specifically, the plaintiff asserts that "as a result of the defendants['] failure to give

---

[2] Attached to the plaintiff's response is a copy of an "Order for Release from Custody of the Alabama Department of Mental Health and Mental Retardation," entered by the Lawrence County Circuit Court on October 24, 2004. The Order directs that the plaintiff be released from Taylor Hardin Secure Medical Facility to the custody of the Lawrence County Jail and for the Lawrence County Sheriff's Department to make arrangements through the mental health center or other treating physician for follow-up care as recommended by clinical staff at Taylor Hardin. The Order does not require that the plaintiff be given particular medications. (Doc. #34, Ex. A).

the proper dosage of Thorazine as determined by a forensic evaluation as an impatient (sic), [the plaintiff] was not in his right state of mind." (Doc. #34 at 8).  He reasons that he "cannot be held to the same standards as a person in the right mind frame." (Doc. #34 at 8).  The plaintiff further contends that his complaints to Captain Yates and medical staff are sufficient to exhaust his administrative remedies given his mental state and that he "cannot be held to the same standards as a mentally competent person that['s] capable of the rational thought that is required to file a grievance." (Doc. #34 at 9).

The plaintiff also takes issue with the failure of the defendants to submit affidavits of Warden Bradley and Officer Johnson, whom the plaintiff contends he notified of the decrease in his Thorazine dosage and that he was having suicidal and homicidal thoughts.[3]  (Doc. #34 at 10-11).  The plaintiff also complains that the defendants failed to follow a court order that he be provided follow-up care as recommended by Taylor Hardin's medical staff.[4]  (Doc. #34 at 12).

The plaintiff next asserts that the defendants' affidavits are inconsistent with the facts.  (Doc. #34 at 14).  Specifically, the plaintiff alleges that he completed one (1) sick call slip with regard to the decrease in Thorazine and also spoke with Captain

---

[3]   Neither Warden Bradley nor Officer Johnson are defendants in this action.

[4]   *See, supra* note 2 (Lawrence County Circuit Court Order directed to Lawrence County Sheriff's Department, not the named defendants).

Yates on several occasions regarding his medical condition and wrote her a letter on November 4, 2004.  (Doc. #34 at 15).  The plaintiff further disputes the defendants' assertion that he did not sustain any real physical injuries during his suicide attempt.  (Doc. #34 at 15-16).  He alleges that he suffered from back pain prior to the suicide attempt but "due to the sudden jolt from jumping off the top bed attempting to hang himself this back injury was [aggravated] . . . ."  (Doc. #34 at 16).  The plaintiff further alleges that his right shoulder was injured during the suicide attempt and he later learned it was broken.  (Doc. #34 at 16).

### III.   <u>DISCUSSION</u>

A.   <u>Eighth Amendment Medical Care Claim</u>.

The United States Supreme Court has held that it is only deliberate indifference to serious medical needs which is actionable under 42 U.S.C. § 1983.  *Estelle v. Gamble*, 429 U.S. 97 (1976).  Indeed, the conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983.  *Bass v. Sullivan*, 550 F.2d 229, 230 (5th Cir. 1977).  Mere negligence is insufficient to support a constitutional claim.  *Fielder v. Brossard*, 590 F.2d 105, 107 (5th Cir. 1979).  Moreover, an accidental or inadvertent failure to provide medical care, or negligent diagnosis or treatment of a medical condition, does not constitute a wrong under the Eighth Amendment.  *See Ramos v.*

*Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).  Additionally, "[m]edical malpractice

does not become a constitutional violation merely because the victim is a prisoner."

*Estelle v. Gamble*, 429 U.S. at 106.  Neither will a mere difference of opinion

between an inmate and the institution's medical staff as to treatment and diagnosis

alone give rise to a cause of action under the Eighth Amendment.  *See Smart v. Villar*,

547 F.2d 112, 114 (10th Cir. 1976); *see also Estelle v. Gamble*, 429 U.S. 97, 107-08

(1976).

 Deliberate indifference can be shown in a variety of ways.  As the Eleventh

Circuit Court of Appeals noted:

> Our cases have consistently held that knowledge of the
> need for medical care and an intentional refusal to provide
> that care constitutes deliberate indifference. Medical
> treatment that is "so grossly incompetent, inadequate, or
> excessive as to shock the conscience or to be intolerable to
> fundamental fairness" constitutes deliberate indifference.
> "A doctor's decision to take an easier and less efficacious
> course of treatment" also constitutes deliberate
> indifference.  Additionally, when the need for medical
> treatment is obvious, medical care that is so cursory as to
> amount to no treatment at all may constitute deliberate
> indifference.

*Adams v. Poag*, 61 F.3d 1537, 1543-44 (11th Cir. 1995) (internal citations omitted).

 An official also acts with deliberate indifference when he intentionally delays

providing an inmate with access to medical treatment, knowing that the inmate has

a life-threatening condition or urgent medical condition that would be exacerbated by delay.  *See Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002); *see also Harris v. Coweta County*, 21 F.3d 388, 394 (11th Cir. 1994).  Delay in access to medical treatment can violate the Eighth Amendment when it is "tantamount to 'unnecessary and wanton infliction of pain.'" *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal citations omitted).

"In contrast, delay or even denial of medical treatment for superficial, non-serious physical conditions does not constitute an Eighth Amendment violation." *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d at 1187-88, *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002).  A medical need is considered serious when delay results in an inmate suffering "a lifelong handicap or permanent loss." *Monmouth County Corr. Inst. Inmates v. Lorenzo*, 834 F.2d 326, 347 (3rd Cir. 1987). An inmate claiming an unconstitutional delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Hill*, 40 F.3d at 1188, *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002).

1.    <u>Defendant Morgan County Jail.</u>

The plaintiff names the Morgan County Jail as a defendant in this action.  The Morgan County Jail is not a legal entity subject to suit under 42 U.S.C. § 1983 and therefore is not a proper party defendant to this action.  *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992).  Consequently, the Morgan County Jail is DISMISSED.

2.    <u>Captain Myra Yates.</u>

a.    *Official Capacity Claim.*

To the extent the plaintiff sues Defendant Yates in her official capacity, Yates is a Morgan County Sheriff's Department Officer and cannot be held liable in damages, in her official capacity, for her own acts or those of her employees because she enjoys Eleventh Amendment immunity.  Such officers are entitled to dismissal of any claims for damages brought against them in their official capacities as state officials.  In *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989), the Eleventh Circuit Court of Appeals held that the Eleventh Amendment bars § 1983 lawsuits against county sheriffs sued in their official capacities.  It was subsequently held that sheriffs' Eleventh Amendment immunity also extends to deputy sheriffs because of their "traditional function under Alabama law as the sheriff's alter ego."  *Carr v. City of Florence, Alabama*, 916 F.2d 1521, 1527 (11th Cir. 1990).  Therefore, to the extent Yates is sued in her official capacity, she is absolutely immune from damages liability

in this action.  Accordingly, Yates' motion for summary judgment is GRANTED and the plaintiff's Eighth Amendment medical care claim against Yates, in her official capacity, is DISMISSED.

  b.  *Individual Capacity Claim.*

There is no dispute that the plaintiff's condition during the relevant time period constituted a serious medical need. However, there is no evidence that Defendant Yates knew of the plaintiff's serious medical need and was deliberately indifferent to that need.  The plaintiff alleges that on November 4, 2004, he wrote letter to Defendant Yates advising her of his condition but received no response from her.

Both parties have produced a copy of a November 2004 letter from the plaintiff, addressed to Captain Yates, in which he writes that he needs to speak with her concerning his Thorazine dosage. (Doc. #28, Ex. 4; Doc. #34, Ex. C). Nevertheless, both copies reveal that Yates' name is crossed out on the letter and Warden Bradley's name is written next to it.  Moreover, both copies show that on November 5, 2004, Warden Bradley, not Defendant Yates, responded to the plaintiff's letter by writing on the bottom of it, "Please fill out sick call and see nurse. You may wish to be placed on list to see psyche nurse. /s/ Warden Bradley."[5]

---

  [5]  The defendants have submitted copies of two subsequent letter from the plaintiff and simply addressed to "Warden."  (Doc. #28, Ex. 4).  In the second letter, the plaintiff requests to be placed in a one man cell.  He contends that he does very well when he is not around people and if

While it appears that the plaintiff complained of his Thorazine dosage in the November 2004 letter addressed to Captain Yates, the plaintiff does not dispute that (1) Captain Yates' name is marked through and Warden Bradley's name is written beside it; and (2)Warden Bradley responded to the plaintiff's complaint concerning the Thorazine dosage, not Captain Yates. As such, the letter does not establish that Defendant Yates knew of the plaintiff's mental health condition. Moreover, even if Defendant Yates knew the plaintiff was suffering from a serious medical need, the record is void of evidence that she was deliberately indifferent to that need. Without any evidence upon which the court could find that Yates knew the plaintiff had a serious medical need and intentionally denied the plaintiff medical care, the plaintiff has failed to set forth the elements of his Eighth Amendment claim. [6] As such, Yates'

---

the Warden allows him this cell, the Warden "won't here (sic) anything else from me. I will behave." (Doc. #28, Ex. 4). Warden Bradley responded on November 26, 2004, "Housing decisions are not based upon requests. You are expected to behave wherever we have to house you. /s/ Warden Bradley." In the third letter, the plaintiff apologizes to the Warden for "com[ing] across wrong by asking to get moved to a one man cell." (Doc. #28, Ex. 4). The plaintiff states that he asked for the cell due to his schizophrenia which makes it difficult to be around others. He also assures the Warden that he will behave. (Doc. #28, Ex. 4). On November 29, 2004, Warden Bradley responded, "No offense taken. Thanks. /s/ Warden Bradley." (Doc. #28, Ex. 4). Neither letter concerns the plaintiff's Thorazine dosage.

[6]     Although the plaintiff briefly states in his response that he spoke with Yates, he fails to give any facts concerning these alleged conversations such as the dates and times they occurred and the nature of the conversations. (Doc. #34 at 15). Vague, general or conclusory allegations are insufficient to merit relief under § 1983. *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). In his sworn affidavit, however, the plaintiff confirms his assertion that he wrote Defendant Yates concerning his complaints. (Doc. #34, Ex. D).

motion for summary judgment is GRANTED and the plaintiff's Eighth Amendment claim against Yates, in her individual capacity, is DISMISSED.

     3.    <u>Southern Health Partners, Inc.</u>

     As stated previously, it is undisputed that the plaintiff suffered from a serious medical need during this time.  The plaintiff argues that SHP was deliberately indifferent to that need by decreasing his dosage of Thorazine which caused him to attempt suicide.  However, the plaintiff does not dispute the following facts: (1) the plaintiff arrived at the Jail taking 150 mgs of Thorazine four times a day (600 total mgs/day), which medical staff asserted was a large dose of Thorazine; (2) Morgan County Jail inmates are administered medications only twice a day; (3) the medical staff was concerned about changing the timing of such a large dosage of Thorazine to twice a day and also the toxic symptoms exhibited by the plaintiff, i.e., the shuffling of his feet, on the dosage of 600 mgs a day; and (4) that, based on these factors, Dr. Luckett prescribed 150 mgs of Thorazine twice a day until the plaintiff could be evaluated by SHP's consulting psychiatrist, Dr. David Anakwenze, who was scheduled to be at the Jail on November 8, 2004.

     Although the plaintiff has established that he suffered from schizophrenia, which constitutes a serious medical need, the record is void of any evidence that SHP was deliberately indifferent to that need when medical staff decreased his dosage of

Thorazine.  Instead, the record shows only that the plaintiff disagreed with SHP's course of treatment.  However, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [does not] support a claim of cruel and unusual punishment." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).  Based on the foregoing, it is not evident that SHP's actions rose to the level of deliberate difference.  Therefore, SHP's motion for summary judgment is GRANTED and the plaintiff's Eighth Amendment medical care claim is DISMISSED.

B.    Morgan County Jail's Grievance Procedure.

Even if the plaintiff had sufficiently stated an Eighth Amendment medical care claim against Defendants SHP and Yates, his claims are also due to be dismissed for his failure to exhaust his administrative remedies.  In 1996, Congress enacted the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA") in an attempt to control the flood of prisoner lawsuits.  Title 42 U.S.C. § 1997e(a), as amended by the PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

It is clear that the plaintiff's allegation that the defendants failed to provide him a proper dosage of Thorazine concerned the conditions under which he was confined in the Morgan County Jail.  It is also clear that the Morgan County Jail has an institutional inmate grievance procedure through which inmates may present such claims to staff for resolution.

It is undisputed that the plaintiff did not file an inmate grievance concerning the decreased dosage of Thorazine.  Instead, the plaintiff argues that he did not have the mental capacity to file a grievance due the defendants' failure to provide him a proper dose of Thorazine and "cannot be held to the same standards as a mentally competent person that['s] capable of the rational thought that is required to file a grievance."  (Doc. #34 at 9).  The plaintiff further contends that his complaints to Captain Yates and medical staff are sufficient exhaustion of administrative remedies given his mental state.

In *Alexander v. Hawk*, the Eleventh Circuit Court of Appeals discussed the amendment of 42 U.S.C. § 1997e(a) by the PLRA, concluding that "Congress now has mandated exhaustion," and that "exhaustion is now a pre-condition to suit [by a prisoner]."  159 F.3d 1321, 1325-26 (11th Cir. 1998).  The Eleventh Circuit has also made it very clear that a district court may not waive this exhaustion requirement. Moreover, the United States Supreme Court, interpreting the intent of Congress,

concluded that exhaustion of administrative remedies is now mandatory even if the procedures to do so do not meet certain "minimum acceptable standards" of fairness and effectiveness, and courts cannot excuse exhaustion even when it would be "appropriate and in the interest of justice." *Booth v. Churner*, 532 U.S. 731, 741 n. 5 (2001).   Based on the foregoing, the plaintiff's failure to complete the administrative process cannot be excused based on the plaintiff's alleged incompetency.  As the U.S. Supreme Court has stated: "[W]e stress the point . . . that we will not read futility or **other exceptions** into the [PLRA's] statutory exhaustion requirements."  *Id*. at 741 n. 6. (emphasis added).

Moreover, the plaintiff's assertion that he was not competent to file a grievance is not well taken.  The court notes that on November 4, 2004, the plaintiff was able to address a letter to Defendant Yates in which he requested to speak with her about his Thorazine dosage.  The court further notes that in November 2004, the plaintiff was capable of writing coherent letters to Warden Bradley requesting certain housing accommodations.  Specifically, the plaintiff was able to advise Warden Bradley that he would behave better if placed in a one man cell due to his schizophrenia.  After Warden Bradley responded that the plaintiff was expected to behave regardless of where he was placed, the plaintiff apologized to the Warden, stated that he did not mean to "come across wrong" and proceeded to give a more detailed explanation of

why he had made such a request.  Based on the foregoing, there is no evidence that the plaintiff was incapable of filing a grievance due to his mental illness.

Inasmuch as it is undisputed that the plaintiff failed to utilize Morgan County's inmate grievance procedure to resolve his medical complaints, the defendants' motions for summary judgment are GRANTED and the plaintiff's Eighth Amendment medical care claims are DISMISSED for his failure to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).

## IV.   CONCLUSION

Based on the foregoing findings of fact and conclusions of law, the defendants' motions for summary judgment as to the plaintiff's Eighth Amendment medical care claims are GRANTED and the plaintiff's claims against Defendants Yates and Southern Health Partners, Inc. are DISMISSED WITH PREJUDICE. A Final Judgment will be entered.

The Clerk is DIRECTED to serve a copy of this Memorandum Opinion upon the plaintiff and upon counsel for the defendants.

DONE this 19th day of September, 2007.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE